FERGUSON VS. MASON.

*March 21 — April 15, 1884.*

REAL PROPERTY: HOMESTEAD. *(1) Freehold to commence* in futuro. *(2-4) Conveyance of homestead without wife's signature: Reservation of homestead right.*

REVERSAL OF JUDGMENT. *(5) Findings of fact: evidence: immaterial error.*

1. A conveyance of land in fee, to take effect at a future time, is valid in this state.

2. A mortgage or other alienation by a married man of his homestead, containing no reservation of the homestead right, is absolutely void unless signed by the wife. [CASSODAY, J., is of the opinion that such a conveyance is void only in so far as it purports to cover the homestead right.]

3. A conveyance of a homestead reserving to the grantor "the sole, free, and absolute use and control" thereof, "so long as he and his wife, or either of them, may live," conveys only a future estate to be enjoyed after the homestead right shall cease, and is valid without the signature of the wife.

4. The reservation in such a conveyance is to the grantor, not to his wife, and therefore is not void as being in favor of a stranger to the deed.

| | |
|---|---|
| 60 | 377 |
| 81 | 268 |
| 60 | 377 |
| 85 | 248 |
| 60 | 377 |
| 88 | 470 |
| 60 | 377 |
| 92 | 484 |
| 60 | 377 |
| 101 | 449 |
| 60 | 377 |
| 104 | 661 |
| 60 | 377 |
| e115 | ³279 |
| f115 | ²281 |
| f115 | ³283 |

5. It is immaterial whether a finding of fact is supported by the evidence or not, if no conclusion of law is based thereon and it does not affect the judgment.

APPEAL from the Circuit Court for *Waukesha* County.

Ejectment, to recover an undivided one-third of certain land described in the complaint. The answer denies the plaintiff's title, and alleges that the defendant is the sole owner of the land in fee simple.

The facts, as they appear from the testimony and the findings of the court, are as follows: In 1877 John Ferguson, Sr., who was the father of these parties, and then the owner of the land claimed, conveyed such land to the defendant. The deed thereof expresses a consideration " of one dollar and love and affection." The land was the homestead of the grantor and his wife, but his wife did not sign the conveyance thereof to the defendant. That conveyance contains the following clause: "The party of the first part reserves the sole, free, and absolute use and control of all the above described lands so long as he and his wife, or either of them, may live." The same reservation is contained in the *habendum* clause. The wife of the grantor, John Ferguson, Sr., died in 1881, and the grantor died in 1882, intestate. His only heirs at law are these parties and one Margaret Darrah, all of full age. On the death of her father the defendant went into possession of the land thus conveyed by him to her, and has entirely excluded the plaintiff from the possession thereof.

The conclusions of law from the above facts are: " 1. That said deed to said *Ellen Mason* did not convey to said grantee the homestead of the grantor; that the same was reserved and excepted from said conveyance. 2. That said deed practically conveyed to said *Ellen Mason* the remainder over on the expiration of a life estate to the grantor for two lives in being, to wit, himself and his wife. 3. That said deed is a good and valid deed, and said John Ferguson, Sr.,

and his wife, being both dead, by it the defendant was rightfully in possession of said real estate at the commencement of this action, and entitled to hold and enjoy the same in fee simple. 4. That defendant is entitled to a judgment dismissing the complaint, with costs."

Judgment was thereupon entered dismissing the complaint, with costs. The plaintiff appeals from the judgment.

For the appellant there were briefs by *Hurlbut & Van Alstine*, and oral argument by *Mr. Van Alstine*. They contended, *inter alia*, that it is the settled law in this state and in several others having similar laws against the alienation of the homestead, that a conveyance by the husband without the consent of his wife properly evidenced does not convey any portion of his quantity of interest whatever, for it is absolutely invalid. *Williams v. Starr*, 5 Wis., 534; *Phelps v. Rooney*, 9 id., 70; *Hait v. Houle*, 19 id., 472; *Hanson v. Edgar*, 34 id., 653; *Kent v. Lasley*, 48 id., 265; *Petesch v. Hambach*, id., 451; *Alley v. Bay*, 9 Iowa, 509; *Williams v. Swetland*, 10 id., 51; *Burnap v. Cook*, 16 id., 149; *Phillips v. Stauch*, 20 Mich., 381; *Amphlett v. Hibbard*, 29 id., 298; *Richards v. Greene*, 73 Ill., 54. It is the whole property or quantity of interest in the homestead which is exempt from sale on execution, and it is the homestead *exempt from sale on execution* which cannot be alienated by the husband without the wife's signature. *Hartman v. Schultz*, 101 Ill., 437; *Hartwell v. McDonald*, 69 id., 293; *Sherrid v. Southwick*, 43 Mich., 515; R. S. 1858, ch. 134, secs. 23, 24; R. S. 1878, secs. 2203, 2983. It is therefore the land itself which cannot be alienated, and not merely the right of possession and use. As well might it be said that a judgment against the husband would be a lien upon his homestead, and that a purchaser at an execution sale thereof would get a vested remainder in fee dependent as to possession upon the determination of the right of homestead, as that the deed in question is valid. The clause reserving the use of the lands

so long as the grantor and his wife or either of them should live, could not help the deed. It gave the wife no rights in the land in case she survived her husband; for it is a reservation. *Rich v. Zeilsdorff*, 22 Wis., 544; *Strasson v. Montgomery*, 32 id., 58; *Reformed Church v. Schoolcraft*, 65 N. Y., 134–150; *Borst v. Empie*, 5 id., 33; *Craig v. Wells*, 11 id., 321; *State v. Wilson*, 42 Me., 9. If such clause be construed as an exception, still the deed vested no estate in the wife, for she was a stranger to the deed, and both reservations and exceptions to a stranger are void. 3 Washb. on R. P. (3d ed.), 377; *Hornbeck v. Westebrook*, 9 Johns., 73; *Ives v. Van Auken*, 34 Barb., 566; *Burr v. Mills*, 21 Wend., 290; *Petition of Young*, 11 R. I., 636; *Logan's Adm'r v. Caldwell*, 23 Mo., 373. Nor can the clause in question have effect as a covenant to stand seized to the use of the wife during her life after the death of her husband. R. S., secs. 2071, 2081, 2204; *Goodrich v. Milwaukee*, 24 Wis., 429; *Downing v. Marshall*, 23 N. Y., 366; *Holmes v. Mead*, 52 id., 332; *Cooper v. Jackson*, 4 Wis., 537.

For the respondent there was a brief by *Parks & Thompson*, and oral argument by *Mr. Parks*. They argued, among other things, that statutes restricting the alienation of the homestead should be construed liberally in aid of the homestead whenever the homestead is in danger, and strictly in all cases where the preservation of the homestead is not in question. Sedgw. on Stat. & Const. Law, 21, note; *Riehl v. Bingenheimer*, 28 Wis., 84; *Wochoska v. Wochoska*, 45 id., 423; *Gee v. Moore*, 14 Cal., 476; *McQuade v. Whaley*, 31 id., 533; *Brooks v. Hyde*, 37 id., 373; *People v. N. Y. C. R. R. Co.*, 13 N. Y., 81; *Leavitt v. Blatchford*, 5 Barb., 13; Plowden, 205; *Holmes v. Carley*, 31 N. Y., 289; *Brown v. Barry*, 3 Dall., 365; 1 Pet., 46; 2 id., 627. Not every deed conveying the homestead is void without the wife's signature; the husband's power of alienation is restricted only so far as is necessary to protect the homestead. *Riehl v. Bingen-*

*heimer*, 28 Wis., 84; *Gee v. Moore*, 14 Cal., 476; Thompson on Homest., sec. 518. In Illinois it is held that a deed by the husband of his homestead without the wife's signature operates to pass the fee subject only to a suspension of the right to take possession until such homestead right is extinguished. *McDonald v. Crandall*, 43 Ill., 238; *Vasey v. Trustees*, 59 id., 191; *Brown v. Coon*, 36 id., 243; *Hewitt v. Templeton*, 48 id., 367; *Hall v. Fullerton*, 69 id., 448. In other states deeds have frequently been held good to convey the premises when under a strict construction of the statute they might be held void. *Smith v. Saxton*, 6 Pick., 486; Thompson on Homest., sec. 491; *Irion v. Mills*, 41 Tex., 311; *Allison v. Shilling*, 27 id., 450; *Brewer v. Wall*, 23 id., 587. There is practically no difference between this deed, so far as it affects the grantee, and a deed conveying the land, left in the hands of a third person in escrow or trust to be delivered to her on the death of the grantor and his wife. Many authorities support such a proceeding. *Ruggles v. Lawson*, 7 Am. Dec., 375; *Hatch v. Hatch*, 6 id., 67; *Belden v. Carter*, 4 id., 185; *Jones v. Jones*, 6 Conn., 111; 16 Am. Dec., 39, note; *Stone v. Duvall*, 77 Ill., 475; *Foster v. Mansfield*, 3 Met., 412; *Wheelright v. Wheelright*, 2 Mass., 447; *Hathaway v. Payne*, 34 N. Y., 92; *Stephens v. Rinehart*, 72 Pa. St., 434; *Wallace v. Harris*, 32 Mich., 380; *Thatcher v. St. Andrew's Church*, 37 id., 264. The reservation created an estate in the future in the grantee and she took nothing in the present. The grantor might have conveyed by a separate deed the estate in the future which would have been upheld as a covenant to stand seized, prior to the statute abolishing uses and trusts (R. S. 1858, ch. 84, sec. 1; R. S. 1878, sec. 2171), and would be held good *now*, under sec. 2059, R. S. 1878. *Arzbacher v. Mayer*, 53 Wis., 388; *Wallis v. Wallis*, 4 Mass., 135; 3 Am. Dec., 211; *Wardwell v. Bassett*, 8 R. I., 305; *Thompson v. Thompson*, 17 Ohio St., 649. That the wife of the grantor had a valu-

able interest conferred upon her by the deed, see *Maynard v. Maynard*, 4 Edw. Ch., 711; *West Point Iron Co. v. Reymert*, 45 N. Y., 703; and a covenant to stand seized for her benefit would be upheld in equity, there being a relationship either by blood or marriage with the parties to the deed. To the point that a conveyance by the husband alone is good, subject only to the homestead right, they cited, further: *Gunnison v. Twitchel*, 38 N. H., 72; *Atkinson v. Atkinson*, 37 id., 434; *Bennett v. Cutler*, 44 id., 69; *Foss v. Strachn*, 42 id., 40; *Howe v. Adams*, 28 Vt., 541; *Davis v. Andrews*, 30 id., 678; *Jewett v. Brock*, 32 id., 65; *Abell v. Lothrop*, 47 id., 375; *Gee v. Moore*, 14 Cal., 472; *Guiod v. Guiod*, id., 506; *Bowman v. Norton*, 16 id., 213; *Brennan v. Wallace*, 25 id., 114; Thompson on Homest., secs. 490, 513, 514; *Godfrey v. Thornton*, 46 Wis., 685; *Doyle v. Coburn*, 6 Allen, 71; *Brettun v. Fox*, 100 Mass., 235; *Smith v. Provin*, 4 Allen, 516; *Castle v. Palmer*, 6 id., 403. The covenants of warranty in the deed bring it within the rule of *Conrad v. Schwamb*, 53 Wis., 372, except that it is not necessary for the grantee to resort to specific performance. The covenants inure to her benefit whenever the grantor was in a condition to carry them out, not on the ground of a *valuable* consideration, but on the ground of consanguinity and a settlement made upon her which estopped the heirs of the grantor from asserting title against his grantee. See *Allison v. Shilling*, 27 Tex., 450; *Brewer v. Wall*, 23 id., 587; *Jones v. Jones*, 16 Am. Dec., 35; 2 Washb. on R. P. (3d ed.), 392, 393; 3 id., 308; 4 Kent's Comm. (11th ed.), 483, 579, note; *Downing v. Marshall*, 23 N. Y., 379; *Cheney v. Watkins*, 2 Am. Dec., 530; *Trafton v. Hawes*, 102 Mass., 533; *Parker v. Nichols*, 7 Pick., 115; 11 Johns., 351.

LYON, J.    I. Laying aside the question of homestead for the present, it is necessary, first, to determine whether a conveyance of land by the owner thereof in fee is valid, in

which it is stipulated that the grantor shall have the possession and absolute use and control of the land during his life.

In very many of the older cases the courts, out of tender regard to the subtle and technical distinctions and niceties of the common law rules respecting the tenure and alienation of real estate, seem to have held that if such a conveyance be regarded as a feoffment, or bargain and sale, it could not be upheld. The reason given was that the effect of the exception or reservation therein contained was to retain the whole estate in the grantor during his life, and to uphold the conveyance would be to violate the rule that a freehold cannot thus be created to commence *in futuro*. So those courts upheld such conveyances on the ground that a covenant might be implied from their terms on the part of each grantor to stand seized of the lands to his own use during his life, and, after his decease, to the use of his grantee and his heirs. Hence, upon the execution of the deed, the grantor was tenant for life, and a remainder in fee was vested in the grantee. Thus, those courts were strictly loyal to the old common law rules which grew out of tenures that never obtained in this country to any great extent, and at the same time gave judgments which are clearly reasonable and just. Many of the cases above referred to are cited in the briefs of the respective counsel.

Such conveyances cannot, however, be upheld in this state on any implied covenant, or on the doctrine that the grantor stands seized to the use of the grantee, for our statutes long since abolished both implied covenants and such uses. R. S. 1858, ch. 84, sec. 1; id., ch. 86, sec. 5; R. S. 1878, secs. 2071, 2204. But we think they may be upheld on other grounds.

The statute recognizes and defines future estates in expectancy as follows: "A future estate is an estate limited to commence in possession at a future day, *either without the intervention of a precedent estate,* or on the determination,

by lapse of time or otherwise, of a precedent estate created at the same time." R. S. 1858, ch. 83, sec. 10; R. S. 1878, 614, sec. 2034. At common law the intervention of a precedent estate created at the same time, was essential to the validity of a conveyance of an estate of freehold to commence at a future time, which is an estate in remainder. It was said that without such precedent estate there could be no valid remainder. The reason was (and it was conclusive to the minds of our English ancestors) that unless a precedent estate was created there could be no livery of seizin to support the remainder; and, without livery of seizin, no estate of freehold could be created. After laying down the rule and giving the reasons therefor above suggested, Blackstone informs us how the future expectant estate, that is, the remainder, may be created. He says: "So, when it is intended to grant an estate of freehold, whereof the enjoyment shall be deferred till a future time, it is necessary to create a previous particular estate, which may subsist till that period of time is completed; and for the grantor to deliver immediate possession of the land to the tenant of this particular estate, which is construed to be giving possession to him in remainder, since his estate and that of the particular tenant are one and the same estate in law. . . . The whole estate passes at once from the grantor to the grantees, and the remainderman is seized of his remainder at the same time that the termor is possessed of his term. The enjoyment of it must, indeed, be deferred till hereafter; but it is, to all intents and purposes, an estate commencing *in præsenti*, though to be occupied and enjoyed *in futuro*." 2 Bl. Comm., 165. But this refined doctrine of the necessity to create a particular estate to support a freehold estate to commence at a future time, has been overturned by the statute above quoted. Similar statutes prevail in a large number of the states of the Union. These are referred to in 2 Washb. on R. P., 265 (4th ed., 592).

Conveyances of land containing exceptions or reservations similar to that in the conveyance under consideration in the present case, are very common and always have been in general use in this country, as the reports of judicial decisions abundantly show. Because of this fact, some courts, in the absence of statutory provisions on the subject, have held such conveyances valid, without much regard to any other ground upon which their judgments might have been placed. This is notably true of the supreme court of Connecticut. *Barrett v. French*, 1 Conn., 362; *Fish v. Sawyer*, 11 Conn., 545; *Bissell v. Grant*, 35 Conn., 288.

Our constitution thus ordains: "All lands within the state are declared to be allodial, and feudal tenures are prohibited." Art. I, sec. 14. That is to say, the owner of land in this state holds the same of no superior. He has absolute dominion over it, owing no rent, service, or fealty to any, on account thereof. His obligation of fealty to the government is an obligation arising out of his citizenship, and is no greater or different because he is a proprietor also. Even the government may not condemn his land to the public use without paying him a just compensation therefor. Why has not the owner of land, held by a tenure so absolute, the right to convey it on such terms and under such restrictions as he chooses to impose, so long as he contravenes no public policy or positive rule of law? And what policy or rule of law is contravened, if, instead of making his conveyance take effect immediately, he stipulates that it shall take effect at the end of a month or a year, or on the happening of some future event? We should be strongly inclined to uphold that right as a necessary incident to allodial tenure, were there no statute expressly conferring it.

The conclusion is inevitable that, if otherwise sufficient, a conveyance of land in fee, to take effect at a future time, is valid, and will vest the fee in the grantee according to the terms of the conveyance.

II. We will now proceed to consider how and to what extent the conveyance under consideration is affected by the facts that the land included therein was, when the same was executed, the homestead of the grantor, and that his wife did not sign such conveyance. The conveyance was executed in 1877. The statute then and still in force enacted that no mortgage or other alienation by a married man of his homestead, exempt by law from execution, shall be valid or of any effect as to such homestead, without the signature of his wife to the same. R. S. 1858, ch. 134, sec. 24; R. S. 1878, 632, sec. 2203. Ch. 270, Laws of 1864, provided as follows:

"Sec. 1. Any homestead which shall have been heretofore disposed of by the last will and testament of the owner thereof, or which shall hereafter be disposed of by the last will and testament of the owner thereof, shall descend to the legatee or legatees in said will named, and they shall take and hold the same according to the terms of said will, free from the incumbrance of all judgments and claims against the testator or his estate, except mortgages lawfully executed thereon.

"Sec. 2. In case the owner of any homestead shall die intestate, leaving a widow and no children, such homestead shall descend to his widow; and in case such owner die intestate, leaving a widow and children, such homestead shall descend to his widow during her widowhood, and in case of her marriage or death, the same shall descend to his legal heirs; and in case such owner die intestate, leaving any child or children, or lineal descendants, but no widow, such homestead shall descend to his legal heirs; and in all cases mentioned in this section such homestead shall descend freed from the incumbrances of all judgments and claims against the intestate or his estate, except mortgages lawfully executed thereon: *provided*, that nothing in this act shall affect laborers' or mechanics' liens."

Although the language of the above sections is somewhat changed in the present Revision, the substance was intended by the revisers to be retained in secs. 2271 and 2280. See Revisers' Notes.

It was held in *Godfrey v. Thornton*, 46 Wis., 677, that during the life of the husband the wife has no *estate* in the homestead, by virtue of the statute, which makes her signature to a conveyance thereof by her husband essential to its validity. But if she survive her husband, and the homestead be not lawfully devised by him, she then takes under the statute a life estate therein, subject to be terminated if she again marries. This is an estate which the law carves out of the estate of the ·husband, and the same reverts to his estate on the marriage or death of his widow. Hence, although the husband, while living, has the whole estate in the homestead, subject only to the disability to convey it without the signature of his wife to the conveyance, yet at his death intestate, a life estate descends to his widow, on condition subsequent that she does not marry, and the reversion only remains in the heirs of the deceased husband. Sir EDWARD COKE defines a reversion as being the returning of land to the grantor, or his heirs after the grant is over. 1 Inst., 142; 2 Bl. Comm., 175. It is none the less a reversion if (as in the case of a homestead) the life estate be created by operation of law, instead of the grant of the owner in fee.

Thus, under the homestead statutes, the wife, during her husband's life, has no estate in his or their homestead, and no interest therein, except such as she derives from her power to prevent an alienation thereof. At his death, she surviving him, and the homestead not having been lawfully devised by him, she becomes tenant for life thereof on condition subsequent. At her death all her homestead rights proper cease. She can devise no interest therein — her heir has none. As before observed, the homestead then reverts

to the heirs of the husband, and no trace of the homestead right adheres therein, except its continued exemption from seizure and sale for the debts of the deceased husband.

True, the statute (ch. 270, Laws of 1864) provides that "in case the owner of any homestead shall die intestate, leaving a widow and no children, such homestead shall descend to his widow." The revisers changed the word "children" to "lawful issue" (sec. 2271, R. S.), as best expressing the manifest meaning of ch. 270; and we think the change of language accomplished that object. The husband dying intestate and without issue, the widow is his heir by the statute of descents in force when ch. 270 was enacted, and would inherit the homestead without the provision above cited. That provision was manifestly inserted for the purpose of exempting the homestead, should the widow inherit it under the statute of descents, from liability to be sold for the debts of the deceased husband; and not to increase or extend her rights in the homestead as a homestead. It is merely an immunity in her favor in respect to a particular kind of property, and the statute would have accomplished the same purpose had the immunity been inserted in the statute of descents, or in that for the sale of lands by administrators to pay the debts of their intestates. It does not, we think, enlarge her estate, present or prospective, in the homestead as such. That terminates in every case when she marries or dies. If she inherited the whole estate, it goes to her heir or devisee, not by virtue of her homestead right, but because she owned the whole estate under the statute of descents.

The above remarks are made without any reference to the widow's right of dower in her deceased husband's estate. Such right is not involved in this case.

Having thus determined the nature and extent of the interest of a wife, and the estate of a widow, in the homestead of her husband, we are brought to consider whether the

conveyance by her father to the defendant is valid or invalid. That conveyance reserved to the grantor "the sole, free, and absolute use and control" of the lands described therein, "so long as he and his wife, or either of them, may live." *Habendum*, "subject to the above reservations and exceptions." In *Gale v. Coburn*, 18 Pick., 397, Chief Justice SHAW delivering the opinion of the court, it was held that the following clause in a deed, "saving and reserving to myself [the grantor], however, the right to use, occupy, and enjoy, during my natural life, free of all rent and charge whatever, and all molestation in the same, the said land and buildings hereby conveyed and granted," was a reservation of the whole and entire estate to the grantor for his life. The same construction has been given to similar clauses in numerous other cases. The exception or reservation in the deed under consideration is just as broad and ample in favor of the grantor as it was in *Gale v. Coburn*. We are satisfied that that case, and the other cases above referred to, were correctly decided, and hence we must give the same construction to the clause in question, contained in the deed to the defendant.

It results from the proposition above stated that the grantor in the deed here in question assumed to convey to the defendant nothing more than the reversionary interest in his homestead, which otherwise, upon the death of himself and wife, would have vested in his heirs. The question is, Does the statute disable him from conveying such interest without the signature of his wife to the deed?

The language of the statute is: "No mortgage or other alienation by a married man of his homestead, exempt by law from execution, shall be valid or of any effect as to such homestead, without the signature of his wife to the same." R. S., 632, sec. 2203. Substantially the same provision is contained in the statutes of California and in the constitution of Texas; yet the supreme court of each of those states has held that

a conveyance of the homestead by the husband without the concurrence of his wife, although it contains no reservation of the homestead right, but is absolute in terms, is a good conveyance of the reversionary interest in the property after the homestead right ceases. *Gee v. Moore,* 14 Cal., 472; *Stewart v. Mackey,* 16 Tex., 56. These decisions are rested on the ground that the entire object of the provision is to secure a homestead, and that it was not intended to infringe upon the husband's rights of property any further than was necessary to accomplish that object; or, in other words, the disability of the statute only goes to the extent essential to preserve the homestead.

It is, however, the settled law of this state, repeatedly recognized and enforced by the judgments of this court, that a conveyance by a married man of his homestead, containing no reservation of the homestead right, is null and void unless signed by his wife. While we concede the accuracy of the rules for construing statutes laid down and applied in the cases last above cited, we think it is essential to the protection of the homestead rights of the wife, present and prospective, that such a conveyance of the homestead by the husband alone, without her concurrence, should not be upheld as a conveyance of the reversion, but should be held void. It is easy to perceive that if the husband be permitted to mortgage or alienate the homestead without the concurrence of his wife, and without an express reservation of the homestead rights of both, the wife or widow, as the case may be, might be compelled to litigate her homestead rights much more frequently than she would be were such conveyances held to be absolutely void. No one can reasonably doubt, we think, that under the Texas and California rule conveyances of homesteads by husbands, without the concurrence of their wives, would be far more frequent than under the rule which prevails in this state. A comparison of the judicial records of those states (particularly Cali-

fornia) with those of this state will sustain these views. In the nature of things it must often occur that a person, especially if he be·a creditor, who would not regard the husband's mortgage or deed of the reversion after the homestead right has ceased, as of any value, would yet be desirous to take a mortgage thereon or a deed thereof, in terms covering the whole interest and estate, trusting to the failure or inability of the wife or widow to defend her rights, or to his own ability to worry her out of them by driving her to expensive and protracted litigation. Such a conveyance is a standing menace of her homestead interest or estate, and an apparent cloud thereon. We are clear that it is within the intention of the statute to shield the wife or widow from this peril to and cloud upon her interest or estate, and hence that the better rule is to hold a mortgage or other instrument of alienation of a homestead absolutely void, if in terms it conveys the whole estate and wants the signature of the wife of the grantor.

It does not necessarily follow, however, that a conveyance by the husband without the concurrence of his wife, which, by its terms, purports to convey only the reversion after the homestead rights shall have terminated, is also void. The statute under consideration must be construed according to the intention of the legislature apparent upon its face,— per Mr. Justice STORY, in *Wilkinson v. Leland*, 2 Pet., 627, (662),— and although this conveyance may be within the letter of the statute imposing a disability upon the husband, yet it is not within the statute unless it is also within the intention of the makers. 7 Bac. Abr. (Lib. ed.), 458, tit. "Statutes," II, § 5. *Holmes v. Carley*, 31 N. Y., 289. These rules are elementary. It is said in *Riehl v. Bingenheimer*, 28 Wis., 84, that "this statute was enacted to protect the wife, and to enable her to protect her family, in the possession and enjoyment of a homestead, after one had been acquired by the husband." Applying the above rules of

construction, it was held that a conveyance of the homestead by the husband to his wife and children, with her assent (though not expressed by signing the conveyance), was valid. The conveyance was manifestly invalid, within the letter of the statute, but not so, regard being had to its spirit and intent. And so the conveyance was upheld as not within the intention of the legislature, although it was within the letter of the statute imposing a disability upon the grantor thus to alienate his homestead. The case of *Wochoska v. Wochoska*, 45 Wis., 423, presents the same features, and the judgment went on the same ground.

We perceive no valid reason why the doctrine of those cases does not rule this case. We have already seen that every possible homestead right, present or prospective, is carefully and effectually reserved by the terms of the conveyance to the defendant, and excluded therefrom, and that it purports to convey nothing but an expectant or future estate, not to commence until every possible homestead right has ceased. What object or purpose of the homestead laws are contravened by holding this to be a valid conveyance? We know of none. It infringes no right either of the wife or widow, but fully recognizes and protects her in every right which the statute confers upon her. Neither does it expose her interest to any peril of attack from the grantee of her husband. Her condition in respect to the homestead, whether as wife or widow, could not possibly have been affected at any time or in any manner by this conveyance. It would seem, therefore, that, under any sound construction of the statute, the conveyance should be held valid.

This view is sustained by the language of the statute itself. R. S., sec. 2203. It does not provide that an alienation of a homestead by the husband shall be void absolutely, without the signature of the wife thereto; but that it shall be void " as to such homestead." It may be claimed that the words quoted were inserted for the purpose of saving

the conveyance as to other land, not a homestead, which might be included in the same conveyance; but there is nothing in the context which warrants that interpretation. The section relates to homesteads alone. We think the reasonable and sound construction is that the words quoted were inserted as a limitation of the disability of the husband to convey the homestead, and that the true meaning thereof is that the husband cannot make a valid conveyance of the homestead right without the signature of his wife thereto. Any other construction of the statute would render that clause redundant and meaningless.

Considering, therefore, both the object of the statute and its language,— or rather the object of the statute made apparent by its language,—and considering also that the conveyance to the defendant of the land in controversy does not infringe any homestead right of the grantor or his wife, we must hold it a valid conveyance, notwithstanding the land was the homestead of the grantor, who was a married man, and the conveyance was not signed by his wife.

It has been suggested that the exemption of a homestead from the lien of judgments against the owner, and from sale on executions issued on such judgments, is no broader or more absolute than is the disability of the married owner to alienate the same without the concurrence of his wife. Were this a correct proposition, it would necessarily follow that if the owner, without the concurrence of his wife, could convey the reversionary interest in the homestead property, a judgment against the owner would become a lien on such interest, and the same might be sold on execution to satisfy the judgment. But the proposition is not correct. The statute not only protects the homestead property from such liens and sales while it remains a homestead, but it protects the same therefrom in the hands of a grantee of the owner of such homestead (R. S., sec. 2983), his devisee (sec. 2280), and his heirs (sec. 2271).

III. It was argued that the conveyance in question contains a reservation in favor of the wife of the grantor, who is a stranger thereto, and hence that such reservation is void. Were this so, the conveyance would take effect from the death of the grantor, and, his wife surviving him, would in terms infringe upon her conditional life estate given by the homestead laws. The conveyance would therefore be void on grounds hereinbefore stated. We think the construction contended for is not the true construction of that clause in the conveyance. The reservation is to the grantor, and the conveyance does not purport to confer any right or estate upon his wife. It merely recognizes her contingent life estate in the homestead which the law gave her should she survive her husband, and postponed the commencement of the defendant's estate therein until her death. In no correct sense does it contain any reservation in favor of the wife of the grantor.

IV. The court found as a fact that the grantor of the defendant, John Ferguson, Sr., in 1877, conveyed to his different children, by deeds, all of his lands, and that the deed to the defendant was one of them. It is objected that this finding is unsupported by the evidence. It is immaterial whether the objection is well taken or not, for no conclusion of law is based upon such finding, and it did not affect the judgment.

In conclusion, it is but just to say that the case was argued by the learned counsel for both parties with great ability, and their learning and research have been of much value to us in determining it.

The judgment of the circuit court must be affirmed.

CASSODAY, J. I fully concur in the decision, and all that is said in the opinion of my brother LYON, except the intimation that had the deed been absolute in form it would have been absolutely void. It seems to me that such deed

would only have been void in so far as it purported to cover the homestead, as defined in the opinion, but valid to the same extent as the deed in question, as held by the court.

*By the Court.*— Judgment affirmed.