WHITMORE and another, Respondents, vs. HAY, Appellant.

*April 12 — May 23, 1893.*

*Homestead: Deed not signed by wife through mistake of law: Equity.*

By an oral agreement between parents and their son they were to convey to him their farm, including the homestead, and he was to support them during their lives. They went to a notary to execute a conveyance and a written contract accordingly, but were advised that if the mother would retain her homestead and dower rights it would best secure the support of her husband and herself; and accordingly the deed was executed only by the father, and no written contract for support was made. The son fully performed the agreement on his part. *Held*, that though the deed was void as a conveyance of the homestead, yet, after the death of the parents, the son was entitled to have the title vested in him as against the other heirs of the grantor.

APPEAL from the Circuit Court for *Milwaukee* County.

This is an action of ejectment, commenced November 24, 1891. The complaint is in the statutory form. The answer consists, first, of a general denial; and for a second and separate defense it alleges, in effect, that June 24, 1876, the defendant entered into the possession of the premises described under claim of title, exclusive of any other right, founding such claim on a deed or written instrument made by one Thomas Hay, Sr., to the defendant, and that the defendant had continued in the open and exclusive occupation and possession of said premises under said deed for more than ten years before the commencement of this action. As a third and separate defense, and by way of an equitable counterclaim, the answer alleges, in effect, that January 15, 1866, the defendant entered into a parol agreement with his father, the said Thomas Hay, Sr., and his mother, Mary Hay, whereby he promised and agreed to purchase said premises from them, and to pay them in consideration therefor $1,100, to wit, $500 in cash, and for the balance thereof he was thereafter to give his promissory note for the further sum of $600 for a conveyance of said premises, and that this defendant further agreed to maintain and support his said father and mother during their natural lives; that the defendant did pay in cash the $500 mentioned at the time of making said parol agreement; that June 24, 1876, in pursuance of said agreement, the defendant made and executed his promissory note, in writing, for said $600, payable to said Thomas Hay, Sr., on demand, and delivered the same to him as a part of such consideration; that thereupon, and on June 24, 1876, the said Thomas Hay, Sr., and Mary Hay, and this defendant went to a notary public for the purpose of having said deed executed and acknowledged; that they were advised by said notary that the agreement for such maintenance and support would be best assured to them by permitting the said

Mary to retain her inchoate dower and homestead interest in and to said premises during her natural life, and that the same would cease at her death and the absolute fee title therein would then vest in this defendant without any other deed except the deed executed by the said Thomas Hay, Sr.; that in pursuance of said advice and of the parol contract or agreement the said Thomas Hay, Sr., duly executed a deed of said premises to the defendant without the signature of his said wife, and delivered the same to him on the day and year last mentioned; that said parol contract or agreement was never reduced to writing, but was expressly agreed to by both his father and mother; and that the defendant had been in the possession of the premises under said deed ever since its execution; that the defendant had fully and faithfully performed his part of said parol contract; that he had cared for and supported his father and mother during their respective lives; that his father's last sickness continued for more than two years, during which time he was helpless; that he died October 18, 1878; that his mother died February 16, 1890; that her last sickness extended over a period of twelve years, during the whole of which time she suffered with paralysis, requiring much care and attention; that his said mother expressly agreed to sign her name to said conveyance in such a way as to vest said title in the defendant; that in 1863 his father paid to his daughter, Jane Hay, the mother of the two plaintiffs, and a half-sister of the defendant, the sum of $400 in cash as and for her share of his estate, and that the same was accepted by said Jane in full payment and satisfaction of her share of her father's estate. Wherefore the defendant demanded judgment that the complaint be dismissed, and that the title to said real estate be adjudged to be in him.

To such equitable counterclaim the plaintiffs replied, in effect alleging that the premises in question were the home-

stead of the said Thomas Hay, Sr., and his wife at the time of the execution of said deed, and continued to be until the time of their deaths. A jury was waived by the parties, and the issues were tried by the court, and at the close of such trial the court found, as matters of fact: (1) That said Thomas Hay, Sr., is the common source of the title of said premises. (2) That he died intestate, October 18, 1878. (3) That he left, him surviving, a widow, the said Mary Hay; his son, this defendant; and another son, Thomas Hay, Jr.; and the two plaintiffs, *Irene J. Whitmore* and *Edith H. Connor*, children of his deceased daughter, the said Jane, as his only heirs at law. (4) That the said widow died February 16, 1890. (5) That June 24, 1876, the land in question constituted the legal homestead and place of residence of the said Thomas Hay, Sr., and his family. (6) That June 24, 1876, and for a long time prior thereto, and thereafter until the date of his death, the said Thomas Hay, Sr., was a married man, and living with his wife on the premises in question. (7) That said Thomas Hay, Sr., was a man of refinement and education, which enabled him to instruct his children without other school or training facilities, to that extent that at least one of them was enabled to secure a certificate as a teacher in the public schools and to become a competent teacher. (8) That in connection with the land in question the said Thomas Hay, Sr., immediately prior to June 24, 1876, was the owner of other contiguous land, and occupied with the lands described in the complaint as one farm, and containing in all 120 acres, or thereabouts. (9) That June 17, 1876, the said Thomas Hay, Sr., prepared two deeds of conveyance, covering separate portions of said farm, both written by himself, the one a warranty deed, in which he and his said wife, Mary, were named as grantors, and one Meyer was named as grantee, purporting to convey twenty acres of said farm outside of the homestead; that the other was a quitclaim

deed, in which the said Thomas Hay, Sr., was named as grantor, and this defendant, *Joseph Hay*, as grantee, purporting to convey to the defendant all the right, title, and interest of the grantor in and to the remainder of said farm, including the homestead. (10) That June 24, 1876, the said Thomas. Hay, Sr., and the said Mary Hay and this defendant, *Joseph Hay*, visited the office of a notary public for the purpose of signing and acknowledging the deeds referred to in the ninth finding of fact herein, and for the purpose of securing the signature by *Joseph Hay* of a contract binding him to care for and support his parents as long as they might live. (11) That the deed to Meyer was signed and acknowledged by the said Thomas Hay, Sr., and Mary Hay, and the quitclaim deed referred to was signed and acknowledged by Thomas Hay, Sr., alone; that said notary public advised the parties that, if Mary Hay would retain her inchoate right of homestead and dower in the premises described in the complaint, it would best secure the care and support of her husband and herself during life; that accordingly the signature of the said Mary Hay, with the knowledge and consent of the defendant, was withheld from said deed, and no written contract for support was made by the defendant. (12) That prior and subsequent to June 24, 1876, the defendant, *Joseph Hay*, with his family, and the said Thomas Hay, Sr., and his said wife, Mary Hay, all occupied the same house on the homestead forty described in the complaint herein; that subsequently to the making of the deed to *Joseph Hay*, the defendant cultivated, paid taxes upon, and controlled the farm described in the deed, including the homestead, and that said Thomas Hay, Sr., and Mary Hay continued to reside on said land until the time of their deaths, respectively. (13) That the defendant has made no permanent and valuable. improvements and has paid no taxes on said lands while holding such lands *adversely;* that he has not at any

time during the lifetime of his father or mother *held such lands adversely* by color of title asserted in good faith, founded on descent or any written instrument. (14) That the defendant has wholly denied the title of the plaintiffs in and to the lands described.

As conclusions of law it is found, in effect: (1) That the plaintiffs are the owners in fee simple, each, of an undivided one-sixth interest of the lands described; (2) and entitled to the possession thereof; (3) that the defendant unlawfully withholds the possession of their interests in and to said land, to their damage in the sum of six cents; (4) that the accounting of mesne profits, if maintainable, is not in issue, or is not determined or affected hereby; (5) that the plaintiffs are entitled to judgment in accordance with these findings, and for costs; and the same was ordered accordingly. From the judgment entered upon said findings in favor of the plaintiffs, the defendant appeals.

For the appellant there was a brief by *E. G. Comstock* and *Kate H. Pier*, and oral argument by *Miss Pier*. They argued, among other things, that a verbal agreement for the transfer of a homestead, assented to by both husband and wife, and followed by a change of possession and performance of the agreement, operates to transfer the equitable title thereto. *Winkleman v. Winkleman*, 79 Iowa, 319; *Drake v. Painter*, 77 id. 731; *Goodell v. Blumer*, 41 Wis. 436; *Boling v. Clark*, 83 Iowa, 481. The defendant, having paid the full consideration for the premises in question in good faith under an agreement with his father and mother that they should at once execute and deliver to him a deed of conveyance of said premises, holds the equitable title of said premises and is entitled to a specific performance of the contract. *Conrad v. Schwamb*, 53 Wis. 379; *Walker v. Kelly*, 91 Mich. 212; *Goodell v. Blumer*, 41 Wis. 436.

*Thomas M. Kearney*, for the respondents.

Whitmore and another vs. Hay.

CASSODAY, J.   It appears from the record that Thomas Hay, Sr., had three children,— Jane, Thomas, Jr., and the defendant, *Joseph*.   Jane died in 1868, and before her father. She was the mother of the plaintiffs, and appears to have received a respectable advancement from her father.   Thomas, Jr., is not a party to this action, and apparently makes no claim to any portion of the property in question.   On the contrary, he appears to have left home and reached the conclusion as early as September 19, 1877, not "to take anything more from the old farm, unless in case of necessity;" and he then accordingly returned in a letter to his brother, the defendant, a note he held against him, and which he had received as a portion of his father's estate. This was manifestly done with the understanding alleged in the counterclaim, to the effect that the defendant should have the farm for taking care of his father and mother during their respective lives; for he said in the same letter: "Endeavor to save money, and make life as agreeable as possible, and be kind, patient, and forbearing to father and mother, as they used to be to you, and do all you can to make their last days happy.   This I know you will do, *and it is all I want.*"   The defendant, *Joseph*, appears to have reached his majority in 1858 or 1859.   Instead of leaving home, he remained with his father and mother, and worked on his father's farm, consisting of 120 acres. In 1865, and when he was nearly twenty-eight years of age, he got married, and with his wife commenced living in an addition to their father's house, built for that purpose.   Thereupon he seems to have worked the farm under some parol agreement or understanding with his father, whereby each had a certain portion of the produce.   In June, 1876, the father became sick, and continued to be sick and helpless most of the time up to his death, October 18, 1878.   The mother was an invalid during the last ten or twelve years of her life.   About the time the father so

became sick he appears to have reached the conclusion that he would make a final disposition of his property, or the most of it.   Accordingly he sold and conveyed twenty acres of the farm outside of the homestead to Meyer, as mentioned in the foregoing statement.   In pursuance of the same purpose he drew the quitclaim deed from himself to the defendant for the conveyance of the balance of the farm, consisting of 100 acres, including the homestead, at his home, June 17, 1876; and then, June 24, 1876, he and his wife and the defendant went to a notary public, some miles distant, in order that he and his wife might execute and acknowledge the deed and have a contract drawn by the notary and executed by the defendant, binding him to care for and support his father and mother as long as they might respectively live.   By the advice of the notary, to the effect that such purpose could be better secured by omitting such written contract altogether, and by the father executing the deed alone, without the signature of his wife, such contract was omitted, and the father executed the deed alone and delivered the same to the defendant, as mentioned in said statement.

The trial court held, in effect, that the deed, having been executed by the father alone, without the signature of his wife, was absolutely void as to the forty acres constituting the homestead, and hence that the plaintiffs, together, were entitled to recover one third thereof in this action of ejectment.

The statute declares that "no mortgage or other alienation by a married man of his homestead, exempt by law from execution, shall be valid or of any effect as to such homestead, without the *signature* of his wife to the same." Sec. 2203, R. S.   Under this statute it has been held that where such deed is executed by the husband, and is signed by the wife, it is valid without her acknowledgment. *Godfrey v. Thornton,* 46 Wis. 677; *Allen v. Perry,* 56 Wis. 178.

The theory' upon which the court so held is that the statute " does not vest any estate in the wife, living the husband, in the homestead, but operates only as a disability of the husband, living the wife, to alienate his homestead without her consent, evinced by her signature to his alienation." In *Ferguson v. Mason*, 60 Wis. 377, it was held that " a conveyance of a homestead, reserving to the grantor the sole, free, and absolute use and control thereof so long as he and his wife, or either of them, may live, conveys only a *future estate*, to be enjoyed after the homestead right shall cease, and is valid without the signature of the wife." In *Conrad v. Schwamb*, 53 Wis. 372, it was held that " a deed executed by husband and wife, which, though otherwise complete, fails through a misdescription to convey the land intended. being the grantor's *homestead*, must be treated as an executory contract *by the husband* to convey, which equity will enforce after the homestead right ceases, *against the husband* or against *his heirs* after his death intestate, *though not against the widow.*" That a deed based upon a good and valuable consideration, but defectively executed, may be treated in equity as an executory contract to convey, is abundantly established in that case and the authorities there cited by the present chief justice.

Our statutes provide that " when the owner of any homestead shall die, *not having lawfully devised the same*, such homestead shall descend," etc., and that " every devise of land in any will shall be construed to convey all the estate of the devisor therein which he could lawfully devise," etc., and that, " when any homestead shall have been disposed of by the last will and testament of the owner thereof, the devisee shall take the same free," etc. Secs. 2271, 2278, 2280. Under these statutes and the decisions of this court, there can be no question but that the father had power, without the consent of his wife, to lawfully devise his homestead to the defendant. *Ferguson v. Ma-*

*son,* 60 Wis. 377; *Albright v. Albright,* 70 Wis. 535.   It is
equally clear that the father had power, without the con-
sent of his wife, to convey his home to the defendant, re-
serving to himself the absolute use and control thereof so
long as he and his wife, or either of them, might live. Had
the parol understanding between the father and the de-
fendant been reduced to writing, and executed by the
father alone, with the requisite formalities, but without
consideration, it probably might have been admitted to pro-
bate as a will, and vested the title in the defendant accord-
ingly.    *Wellborn v. Weaver,* 17 Ga. 267, 63 Am. Dec. 235;
*Babb v. Harrison,* 9 Rich. Eq. 111, 70 Am. Dec. 203; *Bur-
lington University v. Barrett,* 22 Iowa, 60, 92 Am. Dec.
376; *Carlton v. Cameron,* 54 Tex. 72, 38 Am. Rep. 620. See,
also, cases cited in the notes to these several cases.   The
same would be the result, according to some of these cases,
if the deed in question had been executed without consid-
eration, but not delivered so as to take effect until the
death of the father.   See, also, *Turner v. Scott,* 51 Pa. St.
126; *Kelleher v. Kernan,* 60 Md. 440.   But the deed in
question was based upon a good and valuable consideration,
consisting not only of services rendered and to be rendered,
as agreed in the parol contract mentioned, but also in
money; and upon the authorities cited and others to be
cited, we are constrained to hold that the defendant is en-
titled to a specific performance of the same, as against the
heirs at law of the grantor.   *Thrall v. Thrall,* 60 Wis. 503;
*Cable v. Cable,* 146 Pa. St. 451; *Book v. Book,* 104 Pa. St.
240; *Dreisbach v. Serfass,* 126 Pa. St. 32.   In this last case
one, by deed *inter partes* in consideration of a nominal sum
and covenants to be performed, conveyed land to another,
the former reserving a residence and the latter covenant-
ing to supply him with food, lodging, clothing, and all
other necessaries during his lifetime, to be charged upon the
premises until the covenants were performed; and it was

held that such deed was not a testamentary instrument, because it contemplated an immediate possession taken by the grantee, nor was it an absolute conveyance to the grantee in fee, but merely an executory contract vesting an equitable estate in the grantee, the legal title remaining in the grantor during his lifetime. Of course, it follows that upon the performance by such grantee of all the covenants on his part he was entitled to a specific performance of such executory contract. In the case at bar the defendant fully performed the parol agreement on his part. The case, therefore, is very much stronger in favor of the defendant than *Jones v. Jones*, 6 Conn. 111, 16 Am. Dec. 35, which went to the extreme of holding that if a parent, in consideration of love and affection, makes a voluntary deed to his family by way of settlement, which is inoperative for want of delivery in his lifetime, equity will aid the grantees and secure to them the legal title.

Thus far we have considered the question presented as though the defendant and his father were the only parties to the parol agreement. There is another view to be taken of this case, equally favorable to the defendant. The deed was, of course, void as a conveyance of the homestead, by reason of the failure of the wife to sign the same. As already indicated, by the oral agreement she was to sign the deed with her husband, and the defendant was to give the written contract for their maintenance and support, as mentioned. They all three went to the notary to have that purpose carried into execution. They were prevented from doing so by reason of the ill advice of the notary. By his advice and through his influence and their own ignorance of the effect of the transaction the wife refrained from signing the deed, and the defendant entirely omitted to give the written contract, because they were all induced to believe that they would better secure the purpose of the parol agreement by the father executing the deed alone and de-

livering the same to the defendant. The facts seem to bring the case squarely within the well-established rule that courts of equity will interfere and grant equitable relief where, in making the contract, "the minds of the parties did not meet, or where in the case of a written contract *they did not meet on the terms expressed in the writing, but did meet on other terms, not there appearing.*" This rule is abundantly supported by the authorities cited by Mr. Melville M. Bigelow in an article entitled "Mistake of Law as a Ground of Equitable Relief," in 1 Law Quar. Rev. 298. The proposition quoted has been sanctioned by this court, and fully considered upon reason and authority, English and American, in an opinion by Mr. Justice ORTON in *Green Bay & M. Canal Co. v. Hewitt,* 62 Wis. 316. That case and that proposition were reaffirmed in *Silbar v. Ryder,* 63 Wis. 106, where it was held that "a lease which, by reason of the ignorance and mistake of the scrivener, fails to conform to the oral agreement made by the parties, will be reformed if the evidence clearly shows what that agreement was." See, also, *Lusted v. C. & N. W. R. Co.* 71 Wis. 396; *Hagenah v. Geffert,* 73 Wis. 641.

Upon the whole case we are forced to the conclusion that the defendant, upon his equitable counterclaim, is entitled to the relief demanded in his answer.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with direction to enter judgment in favor of the defendant in accordance with this opinion.