MARSHALL ALLBRIGHT, Appellee, v. A. HANNAH, Executor, Appellant.

1  Land Sale by Contract: STATUTE OF FRAUDS. A married daughter's parents, anxious that she should be near them, promised their son-in-law that if he would erect a house on land belonging to them, clear the land, and put it in cultivation, he should have it when they were done with it. The son-in-law performed the
2  conditions and lived on the premises until after his wife's death. *Held*, that the contract was valid, being either the present transfer of the fee subject to a life estate, or an agreement for a devise.

3  ABANDONMENT. The mere fact that the son-in-law removed from the land was not conclusive evidence of an abandonment of his contract rights where he continued to claim an interest, and where his grantors have a life estate.

4  Homesteads. The owner of an uncleared forty acres of land on one side of which, close to the line bounding another forty acres of cleared land owned by him, his residence was situated, abandons his right to claim the former forty acres as a homestead, at least as
6  to all except the part on which the dwelling house is situated, by agreeing with his son-in-law to give the land to him at his death
7  if he clears it off, fences and improves it, in reliance upon which the latter performs his part of the contract.

8  Evidence: TRANSACTION WITH DECEDENT. Under Code, section 3639, excluding a party's testimony regarding any personal communication between him and a deceased person, such a witness may testify to a conversation which he heard between a person since deceased and another, and in which witness took no part.

SELF SERVING DECLARATIONS. In a proceeding to establish a claim against a decedent's estate, based on the assumption that deceased had sold and agreed to convey certain land to claimant, self serving declarations made by decedent during his life time, as to how and under what right claimant claimed the land are not admissible.

ASSESSOR'S BOOKS. Assessor's books are inadmissible to show that land situated within the township was assessed to defendants intestate, in a proceeding to establish a claim against the estate, under an agreement by the deceased to give such land to the claimant if he would clear it off, fence, and improve it.

TAX BOOKS. Tax books are inadmissible in evidence to show that a specified person paid the taxes, where the testimony of the witness who produced the books shows that they furnished no guide as to who, in fact, paid the taxes.

Instructions. An instruction which announces the correct doctrine on any theory applicable to facts involved, must be upheld.

New Trial. A new trial for newly discovered evidence which is merely cumulative is properly refused.

*Appeal from Davis District Court.*—HON. F. W. EICHELBERGER, Judge.

SATURDAY, OCTOBER 9, 1897.

THIS is a proceeding to establish a claim against the estate of Louis Remey, deceased, based upon the assumption that Remey sold and agreed to convey to the claimant forty acres of land in Davis county, and that, instead of making the conveyance as agreed, the land was sold by Remey before his death, to claimant's damage in the sum of one thousand, two hundred dollars. Defendant denies the sale or conveyance of the land to plaintiff; pleads the statute of limitations and the statute of frauds; avers that the land was the homestead of Remey, and that his wife did not concur in the conveyance. A reply denied the affirmative allegations of the answer, and also pleaded certain other facts not necessary to be here recited. The case was tried to a

jury, resulting in a verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*John F. Scarborough* and *Steck & Smith* for appellant.

*Traverse & Taylor* for appellee.

DEEMER, J.—The exact claim made by plaintiff in his petition is that he married the daughter of Remey about twenty-three years ago, and at or about the time of the marriage, Remey and his wife promised that if plaintiff would move a house, which he had then commenced to build upon his father's land, to the land in question, clear it off, fence and improve it, he (deceased) would give it to plaintiff, or that it should be plaintiff's at the time of his (Remey's) death or when he (Remey) was done with it; that plaintiff moved onto the place, made improvements thereon, cleared it off, and fenced it, relying upon said contract of purchase; that, in March, 1895, Remey sold the land, without the knowledge or consent of plaintiff, receiving one thousand two hundred dollars therefor. The defenses relied upon in argument are (1) a denial of the contract; (2) an abandonment by plaintiff of his rights under the contract, if he ever had any; (3) that the property was the homestead of Remey, and, as his wife did not join in the contract, it is void; and (4) certain errors in the rulings of the court made during the progress of the trial.

I. The first complaint is that there is not sufficient evidence of the contract to sustain the verdict of the jury. The court instructed that it must be clearly, definitely, and unequivocally established that there was such a contract as claimed by plaintiff. If the case were triable *de novo*, we would have no hesitation in saying that plaintiff had not made out his case. It is not so

triable, however, and the question is not whether the alleged contract has been established to our satisfaction, but rather whether there is evidence from which a jury, free from passion or prejudice, might find for the plaintiff. Without attempting to set out the evidence, it is enough to say that the jury may have found the following to be the facts: That in the year 1870 appellee married the only daughter of deceased; that at the time of the marriage plaintiff had commenced to build a house on land belonging to his (plaintiff's) father; that deceased and his wife, who were anxious that their daughter should be near them, promised the appellee that if he would move the house onto the land in question, clear the land out, and put it in cultivation, he should have it when Remey was done with it; that, on the strength of this agreement, plaintiff moved his house onto the land, cleared it up, put it in cultivation, and otherwise improved it; that he lived on the premises for about six years, and unt'l after the death of his wife, when he removed to another tract, which he had purchased in the meantime; that, without the knowledge and consent of plaintiff, Remey sold the land which he promised to give to his son-in-law, and afterwards made a will, in which plaintiff was not remembered. The evidence as to the contract made between the parties is not in exact harmony, but the jury was justified in finding therefrom the above state of facts. It is conceded that such a contract, if made, was good. Indeed, it could not well be questioned, for it has frequently been held that a promise, based upon a good consideration, to will certain property to another, is valid, and may be specifically enforced against all persons having notice or knowledge thereof. Beach, Modern Equity, section 602; *Carmichael v. Carmichael*, 72 Mich. 76 (40 N. W. Rep. 173); *Parsell v. Stryker*, 41 N. Y. 480; *Johnson v. Hubbell*, 10 N. J. Eq. 332. If

such a contract can be specifically enforced, it follows that damages may be assessed for its breach. The contract in this case was that plaintiff should have the land upon the death of Remey, or when he and his wife were done with it; and it was either the present transfer of the fee, subject to a life estate, or an agreement to will the property to the plaintiff. Whichever it may have been, it was good if plaintiff accepted it and acted thereon, and took possession of the land thereunder. *Franklin v. Tuckerman,* 68 Iowa, 572.

II.  Appellant contends that there was an abandonment by plaintiff of his rights to the land, if he ever had any therein. This is an affirmative defense, the burden being on defendant to establish it. We do not think there is such evidence of abandonment as to justify us in interfering with the verdict. The mere fact that the appellee moved off of the land in the year 1876 is not conclusive of this question. Under his theory of the case, the Remeys were entitled to a life estate in the land. They were to hold the legal title until they were through with it. The jury may well have found that Remey recognized the validity and force of the contract down to within a year of his death; and there is also evidence that plaintiff, after he had moved off the land, was claiming an interest in it.

III.  Another defense is that the land was the homestead of Remey and his wife at the time it is claimed the contract was made. That Remey and his wife were living upon the forty acres in dispute, and but a few feet from the line between that and another lying south, which they owned at the time the agreement is said to have been made, is conceded; and that they were entitled to a homestead out of this eighty acres is also conceded. Bearing upon this issue, the court gave the following instruction, of which complaint is made: "As to the claim of the

executor that the land was a homestead, you are instructed that if you find beyond doubt that Louis Remey and wife urged plaintiff to move onto the north forty, and promised and agreed with plaintiff that if he would do so, and would clear off and put in cultivation such forty, *he should own said forty at their death, or when they were done with it;* and if you further find that plaintiff accepted such proposition, and in good faith complied with his part of such contract, if one was so made, relying on said promise; and if you also find that Remey and wife are both dead, and left no child or children surviving them,—then the executor could not now be permitted to defend against the claim of plaintiff on the ground that the contract was not valid because the land was the homestead of Louis Remey and wife." This instruction does not say that, under the facts assumed, there would be an abandonment of the homestead; nor does it in terms hold that the agreement would not constitute a sale or disposition of the homestead. Neither does it indicate upon what theory the court held that, under the facts stated, the executor could not defend against the claim on the ground that the property covered by the contract was a homestead. When we find that it announces the correct doctrine upon any theory applicable to the facts stated, it must be upheld. This much the instruction does fairly assume, viz.: that the land was a homestead before the making of the alleged contract. Now, it has been held by the supreme court of Wisconsin, in construing a statute quite like our own, that a sale by the husband alone of the fee title to the homestead, in which he reserved the right to use and occupy the property during the life of himself and wife, was valid and binding. *Ferguson v. Mason,* 60 Wis. 377 (19 N. W. Rep. 420); *Whitemore v. Hay,* 85 Wis. 240 (55 N. W. Rep. 708). See, also, *Smith*

*v. Provin*, 4 Allen, 516; *Doyle v. Coburn*, 6 Allen, 71. We have, to a certain extent, at least, recognized this doctrine. *Harkness v. Burton*, 39 Iowa, 101; *Railroad Co. v. Swinney*, 38 Iowa, 182; *Railway Co. v. McWilliams*, 71 Iowa, 164. But, without committing ourselves to it at this time, it is sufficient to say that the instruction was correct on the theory that there was an abandonment by Remey and his wife of any homestead right they may have had in the premises. In the case of *Drake v. Painter*, 77 Iowa, 731, we held that an oral contract for the sale of homestead, followed by possession taken thereunder, amounted to an abandonment of the homestead by the grantors. And in the case of *Winkleman v. Winkleman*, 79 Iowa, 319, we held that an oral contract by parents to sell their homestead to a son, followed by the son's taking possession thereunder, amounted to an abandonment of the homestead. These cases seem to be based upon the proposition that there cannot be two separate homesteads in the same tract of land, and that, when the grantee acquires one by the consent and acquiescence of the grantors, they (the grantors) lose their homestead rights by abandonment. See, also, *Jones v. Currier*, 65 Iowa, 533; *Bradshaw v. Remick*, 90 Iowa, 409. Aside from this, however, there is little, if any, evidence that Remey or his wife intended to claim any part of the north forty acres as their homestead. The south forty was in cultivation when they made the agreement with their son-in-law, and the evidence tends to show that they claimed this as their homestead. The house they occupied was upon the north forty, but was very close to the line; so close, indeed, that it is difficult to say from the evidence whether or not they knew it was not on the south forty acres. This much is true, however: that neither of them intended to claim any part of the land in controversy as their homestead. If they did intend to so

claim it, they, as we have seen, abandoned this intent when they made the agreement with their son-in-law.

Another proposition is conclusive of this question. Remey had the right to select the land upon which his improvements were located (about one-half acre in extent), and all of the south forty, except an amount equal to that occupied by the dwelling. The right granted by the statute is not confined to congressional subdivisions. Now, from the record before us, it is quite clear that both husband and wife abandoned all claim to any part of the north forty, save the small tract upon which their buildings were located, and that plaintiff, if he made the contract as claimed, is entitled to the value of that land. Defendant does not defend on the ground that the land occupied by the house is homestead. He says that the whole north forty acres are of that character, and that the contract is therefore void.

IV. Claimant was permitted to testify, over defendant's objections, to a conversation he heard between Remey, his wife, and his (plaintiff's) father, in which he (plaintiff) took no part. This evidence was proper, and was not subject to the objection lodged against it. *Smith v. James,* 72 Iowa, 515. The case of *Muir v. Miller,* 82 Iowa, 700, is not in point. Defendant offered in evidence the assessor's books for the township in which the land was situated, to show that the land was assessed to Remey. They were properly rejected. *Adams v. Hickox,* 55 Iowa, 632. He also introduced the tax books, for the purpose of showing that Remey paid the taxes. These were also properly rejected, for the testimony of the witness who produced them showed that they furnished no guide as to who, in fact, paid the taxes. Appellant also complains because the court would not permit him to

prove certain declarations made by Remey during his lifetime, as to how and under what right appellee claimed the land. This evidence was also properly rejected. Plaintiff was allowed to show over defendant's objections that Remey claimed the south forty acres of land as his homestead. This evidence was certainly proper under the issues presented. Appellant filed a motion for a new trial, based upon newly-discovered evidence. The motion was properly overruled, because the evidence was clearly cumulative. Some other unimportant questions are presented, which we do not consider. We have examined the record, and discover no prejudicial error, and the judgment is AFFIRMED.